reasons stated in the appeal of the landlord from a judgment against. him, and which is decided herewith, I think there was no evidence which justified a finding that either did maintain a nuisance. The utmost that can be said is that the tenant would have been liable if he negligently used this cellarway, and, in consequence of such negligence, the plaintiff's intestate met with the injuries which resulted in his death. That question, however, was not submitted to the jury, nor was the action tried upon any such theory. The case having been tried upon the charge of maintaining a nuisance, it cannot be sustained even if we should hold that the jury might have found upon the evidence that this defendant was guilty of negligence.

I think, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs. CLARKE, HOUGHTON and SCOTT, JJ., concur in result.

---

### CHISHOLM v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

1. MASTER AND SERVANT—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was employed by defendant to assist in installing a telephone system along its elevated railway structure, and while walking along the side of the track engaged in moving certain pulleys intestate was struck by a car approaching him from the rear, and killed. There was more than three feet of walk along which intestate, who knew that trains were constantly passing, could have proceeded with safety. Held, that intestate was bound to walk such a distance from the rail that passing cars would neither hit his person nor appliances he was carrying, and that he was therefore guilty of contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 723–742.]

2. SAME—EMPLOYERS' LIABILITY ACT.

Employers' Liability Act, Laws 1902, p. 1748, c. 600, increasing the rights of employés to recover for injuries sustained in the course of their employment, does not change the general law with respect to contributory negligence; the modification of the doctrine provided by section 3 (page 1750) being applicable only to a continuance in the employment after knowledge of defects in the ways, works, or machinery provided by the employer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 670, 671.]

3. SAME—FELLOW SERVANTS.

A common-law master was not responsible to a servant for the negligent acts of another servant exercising superintendence in the management and detail of the work; such person being deemed a fellow servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 427–430.]

4. SAME—EMPLOYERS' LIABILITY ACT—NOTICE—COMPLAINT.

Employers' Liability Act, Laws 1902, p. 1749, c. 600, § 2, provides that no action shall be maintained thereunder unless notice containing certain specified facts shall be given to the employer within 120 days and the action commenced within one year. Held, that the service of a com-

plaint alleging that the death of plaintiff's intestate was caused by common-law negligence was not a sufficient notice to entitle plaintiff to recover under the statute because of the negligence of defendant's superintendent in carrying out the details of the work which he was superintending.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 806.]

Appeal from Trial Term, New York County.

Action by Hugh A. Chisholm, as administrator, of the goods, chattels, and credits of George D. Chisholm, deceased, against the Manhattan Railway Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before PATTERSON, McLAUGHLIN, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Albert J. Kenyon, for appellant.
George H. Corey, for respondent.

HOUGHTON, J. The plaintiff's intestate, an employé of defendant, with others, under one Charles as foreman, was engaged at the time of the accident in installing a telephone system along defendant's elevated railway on Third avenue, in the vicinity of Seventy-Second street. The telephone wires were to be contained in a lead cable, which was suspended from the longitudinal girder. In placing hangers for this cable and in hauling it to its place, the men worked from the top of the elevated structure, sometimes between the rails of the track and sometimes along the foot walk at the side. This walk was covered with boards, and extended 5 feet and 3 inches from the nearest rail, and was protected on the outer side by a hand rail 40 inches high. The cars of a passing train overlapped the rail two feet, leaving a clear walk of three feet and three inches. The pulley blocks and ropes used for hauling the lead cable to its place were carried along this walk. At such times as the pulley blocks were being fastened or unfastened, it was necessary for the men so engaged to work between the tracks, and at times the track was blocked by ropes or cable so that it was necessary for trains to come to a stop. The foreman was provided by the defendant with a red flag and a green flag, and instructed to use the red signal when it was necessary to stop a train, and to post the green signal when it was proper to caution the motorman of trains to take extra precaution or be on the lookout for obstructions or danger. Just prior to the accident the foreman directed the plaintiff's intestate to carry the pulley blocks further up the track to be fastened for another haul of the cable. These blocks weighed three or four pounds each, and were eliptical in form and 8 or 10 inches long. The deceased put two or three of these blocks, attached together by the rope, on his left shoulder, which, as he was proceeding, was next to any passing train, and, in company with a man who was dragging the rope, proceeded northward. The man who had the rope asked to go ahead, and did so, walking four or five feet ahead of the deceased; the rope dragging behind him on the walk. A train, which gave no signal of its approach, came from the rear at about 25 miles an hour, and the side of the first car hit

the blocks on the shoulder of the deceased and threw him, inflicting injuries from which he died. The track was clear, no men were working upon it, and no ropes or cables were on the rails. No cautionary or danger flag was displayed. The complaint is framed under Employers' Liability Act, Laws 1902, p. 1748, c. 600, and the plaintiff claims that Charles was a superintendent of the defendant, exercising superintendence at the time, and that his omission to display the green cautionary flag was an act of negligence for which the defendant is responsible.

Assuming that the notice required by the employers' liability act was properly given, still we do not think the plaintiff showed facts entitling him to a recovery. The track was clear, and there was no reason why trains should not and could not pass the point where plaintiff's intestate was working at their regular speed. There was no reason why the foreman should flag the train which caused the injury or why he should give any notice that it must run with caution. There was a walk more than three feet wide upon which the intestate could proceed with safety and do the work he was directed to do. This gave him ample room to avoid any passing train, and he knew that they were constantly passing. It was incumbent upon him to walk such a distance from the rail that passing cars would neither hit his person nor the blocks upon his shoulder.

The employers' liability act has not changed the general law with respect to contributory negligence. The first section provides that there can be recovery only where the employé "is himself in the exercise or due care and diligence." The modification of the doctrine of contributory negligence provided by section 3 of the act relates to continuance in the employment after knowledge of defects in the ways, works, or machinery provided by the employer. The plaintiff not only failed to prove that the superintendent in charge was negligent, but also failed to prove that his intestate was free from contributory negligence.

We have treated the case thus far as one under the employers' liability act. No formal notice was given. A summons and complaint in a common-law action for negligence was served within the time prescribed for notice. That action was discontinued and the present action begun, alleging that notice under the statute was duly given, which the answer denied. On the trial the plaintiff offered in evidence the first complaint served, claiming it to be a notice under the statute. It was received in evidence over defendant's objection that it was insufficient. Notwithstanding the intimation of this court in Johnson v. Roach, 83 App. Div. 351, 82 N. Y. Supp. 203, that the service of such a complaint might be a compliance with the statute with respect to notice, upon further consideration we think it insufficient.

The provision of section 2 of the act with respect to notice is as follows:

"Sec. 2. No action for recovery of compensation for injury or death under this act shall be maintained unless notice of the time, place and cause of the injury is given to the employer within one hundred and twenty days and the action is commenced within one year after the occurrence of the accident causing the injury or death. The notice required by this section shall be in writing and signed by the person injured or by some one in his behalf, but if from physical or mental incapacity it is impossible for the person injured to give

notice within the time provided in said section, he may give the same within ten days after such incapacity is removed. In case of his death without having given such notice, his executor or administrator may give such notice within sixty days after his appointment, but no notice under the provisions of this section shall be deemed to be invalid or insufficient solely by reason of any inaccuracy in stating the time, place or cause of the injury if it be shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby."

The giving of the prescribed notice is a condition precedent to the maintenance of an action for the recovery of compensation for injury or death under the employers' liability act. The act does not take away any common-law right of action for negligence. It gives to the employé an additional cause of action against his employer arising out of the negligence of a superintendent or one acting as such. Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411; Bellegarde v. Union Bag & Paper Co., 90 App. Div. 577, 86 N. Y. Supp. 72, affirmed 181 N. Y. 512, 73 N. E. 1119. An employé cannot bring his action under the act and, without amendment of his complaint, recover upon a common-law cause of action. Davis v. Broadalbin Knitting Co., 90 App. Div. 567, 86 N. Y. Supp. 127, affirmed 185 N. Y. 613, 78 N. E. 1102. At common law an employer is bound to provide his employé with reasonably safe ways, works, and machinery. Under the common law, although the employer is liable to his employé for the acts of his alter ego, he is not responsible for the negligent acts of one exercising superintendence in the management and detail of the work; for such a person is deemed a fellow servant. Loughlin v. State of New York, 105 N. Y. 159, 11 N. E. 371; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905. The difference between a common-law action and one under the act is further illustrated by the fact that under the act the action must be brought within one year, while an action for personal injuries because of negligence at common law may be brought at any time within three years. Code Civ. Proc, § 383. The liability of the employer under the common law and under the act being different, so far at least as his liability for the negligence of his superintendent is concerned, the notice, in order to permit the bringing of an action under the statute, should be sufficient to apprise him that liability is claimed because of the statute and under its provisions.

In speaking of the essential elements of a notice required by statute to be given of the time, place, and cause of injury upon a highway, quite similar in its provisions to those of the employers' liability act, the Supreme Court of Massachusetts in Kenady v. City of Lawrence, 128 Mass. 318, says:

"No statement of the facts of the injury or accident can be regarded as notice under the statute unless it appears to have been made with the intention of giving that notice."

In treating of the same statute in another case (Bowes v. City of Boston, 155 Mass. 344, 29 N. E. 633, 15 L. R. A. 365), the court held that a person injured could not by notice give the cause of the injury as one defect and recover for another cause not disclosed. Under the employers' liability act of Massachusetts, which is more liberal with respect to notice than our own, it is held that the bringing of an action

under the act and mere service of the pleading is not a compliance with the requirements as to notice. Foley v. Pettee Machine Works, 149 Mass. 294, 21 N. E. 304, 4 L. R. A. 51. In another case, while it was held that the requirement of notice under the statute should not be construed with technical strictness, yet enough should appear by the notice to show that the notice was intended as a basis of claim for the injuries sustained. Driscoll v. City of Fall River, 163 Mass. 105, 39 N. E. 1003. In McDougall v. City of Boston, 134 Mass. 149, an instruction "that the plaintiff was bound by the statement in the notice as to the cause of the accident, and was limited to the defects stated therein," was held proper. Under the English act actual knowledge from verbal communication as to the time, place, and cause of the injury does not excuse the giving of the statutory notice. Keen v. Hillwall Dock Company, 8 Q. B. Div. 482.

Mr. Dresser, in his work on Employers' Liability, after citing the decisions of the various states which have enacted statutes similar to our own, most of which require a similar notice, concludes as follows:

"The purpose of the notice is to give the defendant an early opportunity to investigate the question of his liability for the injury, while the conditions remain substantially the same and the means of investigation are at hand. The notice itself is not a part of the pleading, and it need not state with technical accuracy a cause of action. It is, however, information to the defendant of an injury caused by his negligence in some regard, and in the absence of knowledge by the defendant he has a right to rely upon the plaintiff's story of how the accident occurred. The statute relating to the inaccuracy of a notice relieves the plaintiff of the dangers arising from an inexact statement when he did not intend to mislead the defendant, or when the latter was not, in fact, misled. When, therefore, a plaintiff gives a notice setting up a certain cause of action, and the defendant has no reason to believe that the cause stated is not the one upon which the plaintiff is to rely, the plaintiff should be concluded by, the statements contained in his notice, and not permitted at the trial to prove a different state of facts under a declaration counting on a different cause of action." Dresser's Employers' Liability, § 33, p. 180.

The service of the complaint alleging that the death of plaintiff's intestate was caused by common-law negligence in no way apprised the defendant that the plaintiff intended to hold it liable under the statute because of the negligence of its superintendent in carrying out the details of the work which he was superintending. On the contrary, from that complaint the defendant had the right to assume that a complete defense to plaintiff's claim existed in the fact that its superintendent in the work he was performing was a co-servant of the deceased, and hence that it was not liable for his negligence.

The precise question under consideration, so far as we have been able to ascertain, had not been passed upon by the courts of this state; but such decisions as have been made all show the necessity and importance of the notice in order to entitle a party to claim the benefits of the employers' liability act. Gmaehle v. Rosenberg, supra; Johnson v. Roach, supra; Hoehn v. Lautz, 94 App. Div. 14, 87 N. Y. Supp. 921; Randall v. Hollbrook Contracting Co., 95 App. Div. 336, 88 N. Y. Supp. 681; Grasso v. Holbrook, Cabot & Daly Contracting Co., 102 App. Div. 49, 92 N. Y. Supp. 101; O'Neil v. Karr, 110 App. Div. 571, 97 N. Y. Supp. 148.

Our conclusion is that the service of the complaint alleging common-law negligence only was ineffectual as a notice, and that, in order to entitle an employé or his representatives in case of death to recover under the employers' liability act, a notice setting forth the facts required by the statute and showing an intention to make a claim for damages under the provisions of the act must be served within the prescribed time. It is not claimed that the plaintiff made a case except under the act.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

INGRAHAM, J. I concur with Mr. Justice HOUGHTON in his opinion. It is quite evident that the failure of the foreman to display a flag to warn approaching trains was not the proximate cause of the injury. The motorman of the car was called by the plaintiff, and testified that as he approached Seventy-Fourth street he observed two men walking on the foot path, east of the track, one ahead of the other; the man in the rear carrying something on his shoulder. The object of displaying the flag was to warn approaching trains that workmen were working on the track, so that the motormen could proceed with caution. The motorman of this train saw the men, and therefore had all the notice that would have been conveyed to him if a flag had been displayed. Accepting the motorman's testimony, it is quite clear that he was not guilty of negligence. So far as I can see, there is nothing to impeach his evidence that it was the action of the plaintiff's intestate in moving towards the car when the front of the train had caught up with him that caused the injury. If it could be said that the foreman as the person charged with the acts of superintendence was guilty of negligence in not displaying this flag, that negligence had no relation to the accident as the motorman saw all that the flag would have told him. Certainly the motorman was not charged with the duty of superintendence in relation to the deceased.